IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMES A. POUNDERS,

        Plaintiff,

v.                                    CV 14-347 KG/WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

James Pounders applied for disability insurance benefits on April 8, 2010, based on a lower back injury, wrist injuries, a right shoulder injury, a neck injury, mesenteric fibrosis, and attention-deficit/hyperactivity disorder. (Administrative Record "AR" 86, 170.) After his application was denied at all administrative levels, he brought this proceeding for judicial review. The case is before me now on Pounders's Motion to Reverse and Remand for Rehearing with Supporting Memorandum, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Pounders's reply. (Docs. 16-18.) For the reasons explained below, I recommend that the Court grant Pounders's motion and remand this case to the SSA for proceedings consistent with this Proposed Findings and Recommended Disposition ("PFRD").

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4) & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work

in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Pounders is a fifty-four-year-old man with a GED and the equivalent of two years of community college. (AR 47-48.) He did data entry work from 1997-1999 and worked as a truck driver from 1998-2009. (AR 172.) Pounders claims disability beginning on July 1, 2009. (AR 84.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Pounders had a spinal fusion in the early 1990s and then returned to work. (AR 314.) In a Disability Report dated September 23, 2010, Pounders reported that he had "been going to NM Workforce to get help to find a job." (AR 203.)

Pounders's primary care physician, Barbara Vall-Spinosa, ordered spinal x-rays on March 12, 2011. (AR 324.) The x-rays showed that Pounders had good spinal alignment, early

degeneration of L2-L3, advanced degeneration of L5-S1, moderate osteoarthritis of the synovial joints, and no evidence of complications related to the orthopedic hardware at the spinal fusion of L4-S1. (*Id.*) Dr. Vall-Spinosa ordered a spinal MRI on April 26, 2011, that showed bilateral renal cysts and no other significant abnormalities. (AR 351.)

Neurosurgeon James Harrington, M.D., saw Pounders on May 2, 2011. (AR 343.) Dr. Harrington noted that Pounders exhibited good range of motion in the neck and lumbar spine with minimal discomfort. (AR 344.) Dr. Harrington ordered a spinal CT on June 8, 2011, that showed diffuse posterior disc bulge at L3-L4, mild degenerative loss of disc space height at L5-S1, and no significant lumbar spinal canal stenosis. (AR 354-55.) Dr. Harrington noted that Pounders had failed back syndrome years after his 1992 spinal fusion. (*Id.*)

At a June 13, 2011, follow-up visit, Dr. Harrington noted that Pounders exhibited mild to moderate diminished range of motion in flexion and extension of the lumbar spine. Dr. Harrington wrote that Pounders should consider the possibility of minimally invasive fusion at L3-L4 for adjacent segment syndrome, but that Pounders would have to quit smoking before surgery. (AR 341.)

Dr. Harrington filled out a medical source statement for Pounders on June 16, 2011. Dr. Harrington indicated that Pounders's limitations would be expected to last more than one year; that carrying or lifting are limited due to "regeneration" above a previous fusion; that standing or walking are limited from spinal pain when standing, and Pounders could stand or walk up to two hours during a regular work-day; that sitting is limited to up to two hours in an eight-hour work day; that Pounders can do limited overhead reaching due to pain; that he is not aware of any non-exertional issues affecting Pounders's ability to perform sustained full-time work; that Pounders's pain/symptoms are severe enough to interfere with attention or concentration

frequently on a typical day; and that, in his opinion, Pounders cannot perform full-time work. (AR 357-59.)

Pounders visited Dr. Harrington again on August 15, 2011, but still had not quit smoking. (AR 397.) Dr. Harrington noted that Pounders had good range of motion in the lumbar spine and a normal neurologic exam of the lower extremities. (*Id.*) Dr. Harrington assessed Pounders with adjacent segment syndrome and recommended epidural steroid injections or other nonoperative management unless and until Pounders stopped smoking. (*Id.*)

Pounders saw Heather Cumbo, M.D., at psychiatry intake on April 13, 2012. (AR 446.) Dr. Vall-Spinosa referred Pounders to the psychiatric clinic for depression. (AR 447.) Dr. Cumbo diagnosed Pounders with major depressive disorder, single episode, severe without psychotic features, and a GAF of 55.[1] (AR 448.)

### HEARING TESTIMONY

Pounders, who was represented by counsel, testified at the hearing on April 25, 2012. (AR 39-82.) Pounders testified that he had been collecting state unemployment benefits until two weeks prior to the hearing and that he was attending school part-time, but was not looking for work. (AR 42-43.) Pounders earned his GED and has taken about two years of college credits at a community college. (AR 47-48.) Pounders stated that his teachers have given him an accommodation to not disrupt the class, such that he can sit in the back of the class and sit or stand as needed. (AR 53.) He said that he has difficulty spelling and writing in his classes. (AR

---

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between fifty-one and sixty is assessed when the patient is believed to have "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Pounders's mental health providers used this scoring method.

47.) Pounders said that his social worker thinks he has dyslexia and that he was diagnosed with attention-deficit disorder in the 1980s. (AR 54.)

Pounders fell out of a truck and injured his back in 1992. (AR 44.) Pounders admitted that he had a workers compensation settlement in 1993 and received social security benefits from 1993-1997. (AR 50.) He returned to work but was laid off from his truck-driving job in June 2009. (AR 44.) Pounders said that he does not know how to do anything that is not physical labor, and therefore he cannot work. (*Id.*) Pounders stated that climbing stairs and ladders exacerbates his leg injury, and he suffers from arthritis in the neck, shoulders, and wrists from the 1992 fall. (AR 44-45.) Pounders testified that he does not do anything for pain other than take medication. (AR 46.)

On an average day, Pounders said that he wakes up, drinks coffee, has a cigarette, gets ready for school, brushes his teeth, he or his wife drives them to school, he goes to class, goes home for lunch, naps, studies, watches television, and then goes to bed. (AR 51-52.) Pounders testified that his Commercial Driver's License would be active until 2014, that he can drive for about ten minutes, and that his wife does all of the housework. (AR 48-49.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on June 29, 2012. (AR 21.) The ALJ determined that Pounders suffers from the severe impairment of status post lumbar fusion with residual back pain. (AR 26.) The ALJ noted that Pounders has the nonsevere, medically determinable impairments of sleep apnea and depression. (*Id.*) With regard to depression, the ALJ noted that the record contains one note, from Dr. Cumbo, diagnosing Pounders with depression. The ALJ addressed all evidence in the record related to depression. (*Id.*) The ALJ concluded that the record evidences Pounders's physical problems and some mild depression related to pain. (*Id.*)

At step two, the ALJ found that Pounders has mild difficulties with regard to concentration, persistence or pace, but no difficulties with social functioning, no restriction in activities of daily living, and no episodes of decompensation. (AR 27.) The ALJ assessed Pounders's with an RFC allowing for medium work, except that he must be able to change positions from sitting to standing approximately every hour; can occasionally balance, stoop, and climb stairs; and may never kneel, crouch, crawl, or climb ladders or scaffolds. (AR 28.)

The ALJ summarized Pounders's testimony and the record. (AR 28-30.) The ALJ noted that Pounders testified to collecting unemployment for three years prior to the hearing, but had been attending school rather than looking for work. (AR 28.) The ALJ discussed Dr. Harrington's medical source statement. (AR 29.) The ALJ gave "little weight" to Dr. Harrington's opinion because it was not supported by Dr. Harrington's notes or the record as a whole. Dr. Harrington wrote in May 2011 that Pounders had "a failed back syndrome 18 years after his back fusion with 'some degree of musculoskeletal pain. The degree does not appear to be severe.'" (AR 30.) The ALJ went on to state that it is always possible that "a provider may express an opinion in an effort to assist a patient with whom he . . . sympathizes . . . . While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the doctor[']s own notes and . . . evidence of record." (*Id.*) The ALJ then discussed the findings of Pounders's spinal CT scans, showing mild degenerative changes. (*Id.*)

Next, the ALJ made a finding as to Pounders's credibility. The ALJ determined that Pounders's medically determinable impairments might be expected to cause some of his alleged symptoms, but that Pounders's statements regarding the persistence, intensity, and limiting effects of his symptoms were not wholly credible. (*Id.*) In support of this finding, the ALJ wrote

that the record reflects that Pounders attended classes four days a week, despite claims of being unable to work at all, and spent a "substantial portion of the week" "work[ing]" on school. (*Id.*) The ALJ concluded that attending school suggested that Pounders may have overstated his symptoms and limitations. (*Id.*) The ALJ then discussed Pounders's receipt of unemployment benefits during the period of disability, which required Pounders to hold himself out as being "ready, willing, and able to perform work activities." (*Id.*) The ALJ concluded that this meant either that Pounders's claims of disabling symptoms were not credible or that he provided information to a state agency that was not credible. (*Id.*)

The ALJ concluded that Pounders was unable to perform his past relevant work. (AR 31.) Upon consideration of Pounders's age, education, work experience, and RFC, the ALJ determined that Pounders could perform work as a shipping and receiving weigher or a parking lot attendant. (AR 32.) On that basis, the ALJ concluded that Pounders was not disabled. (*Id.*)

### DISCUSSION

Pounders argues that the ALJ erred at steps four and five. Pounders contends that the ALJ erred at step four by failing to find any limitations from his mental impairment, failing to provide legitimate reasons for rejecting Dr. Harrington's opinion, failing to perform a function-by-function assessment of his RFC, and conducting an improper credibility analysis. Pounders argues that the ALJ erred at step five by failing to clarify an inconsistency between the testimony of a vocational expert and the Dictionary of Occupational Titles, and by failing to clarify an inconsistency between the vocational expert's testimony and the stated RFC. Because I find reversible error at step four, I do not address Pounders's arguments or claims of error at step five.

**I.     Mental Impairment**

Pounders summarily argues that the ALJ erred by not including any mental limitations in his RFC. The Commissioner counters that this point should be rejected because the ALJ weighed evidence regarding Pounders's depression at step two, and the evidence of record did not suggest any mental limitations on Pounders's RFC.

The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen*, 482 U.S. at 146; *Talbot*, 814 F.2d at 1460. Here, Pounders produced evidence sufficient for the ALJ to find depression to be a medically determinable impairment. However, the ALJ appropriately addressed and discussed all record evidence related to depression and specifically explained her findings that any mental impairments did not interfere with Pounders's ability to function. (*See* AR 26-27.) Pounders's argument that the ALJ erred as a matter of law by not including mental limitations in the RFC is without merit.

## II.     Dr. Harrington's Opinion

Pounders contends that the ALJ failed to conduct a proper analysis of Dr. Harrington's opinion, as required by *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011), that Pounders is limited in the ability to perform overhead reaching, that pain is likely to frequently interfere with Pounders's attention or concentration, and that Pounders is unable to perform full-time work.

The Commissioner counters that the ALJ appropriately weighed Dr. Harrington's opinion as to Pounders's limitations, and that his opinion as to Pounders's ability to perform full-time work is not entitled to any deference as it is an opinion on an issue reserved to the Commissioner by 20 C.F.R. § 404.1527(d)(1)-(3) and *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

The Commissioner is correct that a treating source's opinion on an issue reserved to the Commissioner—namely, whether a claimant is "disabled" or "unable to work"—is not entitled to any special significance by virtue of being from a treating source. 20 C.F.R. § 404.1527(d). The ALJ did not commit legal error by not giving deference to Dr. Harrington's opinion that Pounders is unable to work full-time.

*Krauser* requires the ALJ to conduct a two-part inquiry with regard to treating physicians. First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. 638 F.3d at 1330. A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).[2] If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process. *Id.* In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. § 404.1527(c).[3] The Tenth

---

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[3] These factors include:

(1) Examining relationship . . . . (2) Treatment relationship. . . . (i) Length of the treatment relationship and the frequency of examination. . . . (ii) Nature and extent of the treatment relationship. . . . (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. [The ALJ] will evaluate the degree to which these opinions consider all of the pertinent evidence in [a claimant's] claim, including opinions of treating and other examining sources. (4)

Circuit has found that "[a] physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source." *Luttrell v. Astrue*, 453 F. App'x 786, 793 (10th Cir. 2011) (unpublished) (quotation omitted).

The ALJ expressly did not give controlling weight to Dr. Harrington's opinion. (AR 29.) I look next to see whether the ALJ applied the factors laid out in 20 C.F.R. § 404.1527(c). *Krauser*, 638 F.3d at 1330.

The ALJ did not include any discussion of the factors set forth in 20 C.F.R. § 404.1527(c) when discussing the weight accorded to Dr. Harrington's opinion. Failure to apply the second prong of *Krauser* when weighing a treating physician's opinion constitutes reversible legal error. *Krauser*, 638 F.3d at 1331. On remand, I recommend that the Court direct the ALJ to apply 20 C.F.R. § 404.1527(c) to Dr. Harrington's opinion and discuss the factors related to the weight assigned to that opinion.

### III. Function-by-Function RFC Assessment

Pounders next contends that the ALJ failed to conduct a function-by-function analysis when making the RFC finding. Pounders cites SSR 96-8p and 20 C.F.R. § 404.1545 for the

---

Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion. (5) Specialization. [The ALJ will] generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. (6) Other factors. When [the ALJ] consider[s] how much weight to give to a medical opinion, [the ALJ] will also consider any factors [brought] to [her] attention, or of which [she is] aware, which tend to support or contradict the opinion. For example, the amount of understanding of [SSA's] disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in [a claimant's] case record are relevant factors that [the ALJ] will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527(c).

proposition that the ALJ must separately address each of the seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Pounders argues that the ALJ did not separately consider the sitting, standing, or walking requirements and that this failure constitutes reversible error.

SSR 96-8p requires that the ALJ consider each of the seven strength demands separately. 1996 WL 374184, at *5 (July 2, 1996). Further, the ALJ must provide a narrative discussion detailing how the evidence supports each conclusion and citing medical and nonmedical evidence. *Id.* at *7. This narrative discussion must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each [strength demand] the individual can perform based on the evidence available in the case record." *Id.* That is, the ALJ is required to tie evidence to the functional limitations in the RFC by separately considering each function and respective limitations. *See Guana v. Astrue*, No. 11-CV-02871-LTB, 2013 WL 316022, at *6 (D. Colo. Jan. 28, 2013) (remanding the case because the ALJ's discussion was too "general and sweeping . . . . [m]erely presenting [the] evidence and an evaluation of it does not bridge the gap between the evidence and the ultimate RFC determination"). SSR 96-8p also states that "[a]t step 4 . . . , the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' [or] 'very heavy'"; a function-by-function analysis is required first. 1996 WL 374184, at *3.

Here, the ALJ does not address Pounders's ability to lift, carry, push, or pull. While the RFC does require that Pounders be allowed to change positions from sitting to standing approximately every hour, nowhere in the narrative discussion or the RFC does the ALJ address specific limitations on Pounders's ability to sit, stand, or walk. There was no reference to the

seven strength demands throughout the ALJ's discussion. (*See* AR 26-31.) Instead, as in *Guana*, the ALJ's discussion is general and sweeping, presenting evidence from the sources but not providing connections to the RFC. (*Id.*) The ALJ did not bridge the gap between the evidence and her RFC determination. Based on the ALJ's failure to assess Pounders's work-related abilities on a function-by-function basis as required under SSR 96-8p and associated case law, I find grounds to remand this case. On remand, I recommend that the Court direct the ALJ to analyze the seven strength demands in crafting her RFC.

Because I find legal error in the manner in which the ALJ handled Dr. Harrington's opinion, I do not reach the issue of whether the ALJ conducted an appropriate credibility analysis of Pounders. Re-weighing the medical evidence may adjust the ALJ's credibility determination. Additionally, because I find legal error at step four, I do not reach Pounders's claims of error at step five.

## CONCLUSION

I recommend that the Court find that the ALJ committed legal error at the RFC stage by failing to appropriately assess Dr. Harrington's opinion in accordance with 20 C.F.R. § 404.1527(c) and by failing to conduct a function-by-function analysis as required by SSR 96-8p. I recommend that the Court remand this case for proceedings consistent with this PFRD and direct the ALJ to appropriately evaluate Dr. Harrington's opinion and include a function-by-function analysis when crafting her RFC.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.